**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Criminal Action No. 18-0577 (ES) |
| v. | : |
| | : OPINION |
| FRED RIVERS | : |

**SALAS, DISTRICT JUDGE**

## I. Introduction

After the close of the Government's evidence in this matter, counsel for defendant Fred Rivers ("Defendant") made an "oral application for a Rule 29 motion for judgment of acquittal." (D.E. No. 70 ("Vol. II") at 457:7–9). Under Federal Rule of Criminal Procedure 29(b), the Court "reserve[d] its decision on [D]efendant's motion and . . . proceed[ed] with trial." (*Id.* at 457:15–18). The jury ultimately acquitted Defendant on Count One of the Indictment (D.E. No 11)—receiving bribes in violation of 18 U.S.C. § 201(b)(2)(A) & (C)—but convicted him on Count Two—conspiring to defraud the United States in violation of 18 U.S.C. § 371. (D.E. No. 62; D.E. No. 68 ("Vol. IV") at 715:5–18).

On July 25, 2019, Defendant formally moved with a "Motion for a Judgment of Acquittal [on Count Two] pursuant to Fed. R. Crim. P. 29(c), or in the alternative, Motion for a New Trial pursuant to Fed. R. Crim. P. 33" (D.E. No. 72 ("Def. Br.") at 1), which the Government opposed (D.E. No. 73 ("Gov. Br.")). The Court has considered the record and the parties' briefs and, for the reasons discussed below, DENIES Defendant's motion.

## II. Motion for a Judgment of Acquittal

### A. Legal Standard

Under Federal Rule of Criminal Procedure 29, the Court "must uphold the jury's verdict unless *no reasonable juror could* accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." *United States v. Fattah*, 914 F.3d 112, 182–83 (3d Cir. 2019) (emphasis added). In reviewing the sufficiency of the evidence,[1] the Court must view the evidence in the "light most favorable" to the Government, *id.* at 183, and "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006). "A finding of insufficiency should be confined to cases where the prosecution's failure is clear." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (internal quotation marks omitted). Hence "[t]he burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." *United States v. Lore*, 430 F.3d 190, 203 (3d Cir. 2005).

### B. Overview of Count Two

"To sustain its burden of proof on the crime of conspiracy to defraud the United States, the [G]overnment had to prove [beyond a reasonable doubt]: (1) the existence of an agreement; (2) an overt act by one of the conspirators in furtherance of the objective; and (3) an intent on the part of the conspirators to agree as well as to defraud the United States." *United States v. Gambone*, 314 F.3d 163, 176 (3d Cir. 2003). More specifically, Jury Instruction Number 16—based on the Circuit's Model Criminal Jury Instruction 6.18.371A and not contested by either party—defines the elements of Count Two as follows:

---

[1] The Court "decide[s] the motion on the basis of the evidence at the time the ruling was reserved"—here, at the close of the Government's case. *See* Fed. R. Crim. P. 29(b); (Vol. II at 457:7–9).

First: That two or more persons agreed "to defraud the United States," as charged in the Indictment. "Defraud the United States," means to cheat the United States government or any of its agencies out of money or property. It also means to obstruct or interfere with one of the United States government's lawful functions, by deceit, craft, trickery, or dishonest means;

Second: That the defendant was a party to or member of that agreement;

Third: That the defendant joined the agreement or conspiracy knowing of its objective to defraud the United States and intending to join together with at least one other conspirator to achieve that objective; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve a common goal or objective, to defraud the United States; and

Fourth: That at some time during the existence of the agreement or conspiracy, at least one of its members performed an overt act in order to further the objective of the agreement.

(*See* Vol. I at 14:5–15:5). With respect to Count Two, the Indictment alleged that "[b]etween in or about October 2016 and in or about September 2017" Defendant did the following:

> knowingly and intentionally did conspire and agree with others to defraud the United States by interfering with and obstructing the lawful function of the USPS: (a) to properly deliver only legal and permissible substances and materials through the United States mail; and (b) for USPS employees to receive only lawful compensation for such deliveries.

(D.E. No. 11 at 4; *see also* D.E. No. 71 ("Vol. III") at 692:17–25 (arguing that "there are two ways that the defendant is charged with conspiring to interfere with the function of the postal service: (1) to properly deliver only permissible substances . . . ; and (2) for postal employees to receive only lawful compensation for such deliveries")). The Court must affirm the conviction on Count Two "as long as [the Court] find[s] that there was sufficient evidence with respect to one of the [two] alleged [theories] of the conspiracy." *See Gambone*, 314 F.3d at 176. Accordingly, the Court will discuss evidence only on the latter theory: that Defendant conspired to defraud the

United States by interfering with and obstructing the lawful function of the USPS that Postal employees receive only lawful compensation for mail deliveries.[2]

Against that background, "the main issues . . . are whether there was sufficient evidence for a rational jury to find beyond a reasonable doubt that [Defendant] joined the conspiracy charged in the Indictment as a member and that []he knew the criminal purpose or the object of the conspiracy." *See United States v. Reeves*, 84 F. Supp. 3d 375, 396 (D.N.J. 2015); (Def. Br. at 4 (arguing that "[t]here was no proof that [Defendant] knew of an objective of any conspiracy or that he joined any conspiracy with Blackstone and/or Gresham with the conscious object of seeing that goal accomplished")).[3] Accordingly, it is on those issues that the Court will focus its analysis.

**C.    Analysis**

On the first two elements—that the conspiracy charged in the Indictment existed and that Defendant joined it—the Government was required to prove beyond a reasonable doubt that Defendant and another person "arrived at some type of agreement . . . to try to accomplish a common and unlawful objective." (*See* Jury Instruction Number 17; Third Circuit Model Criminal Jury Instruction 6.18.371C). As charged in the Indictment, that "common and unlawful objective" was to "defraud the United States," which means "to interfere with or obstruct one of [the United States's or its agency's] lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest." *See Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924); (Jury

---

[2] "By discussing the evidence only on [that theory] of the conspiracy," the Court "do[es] not imply that the evidence did not support a conviction on the basis of the [other theory]." *See United States v. Gambone*, 314 F.3d 163, 177 (3d Cir. 2003).

[3] As the Government observes, Defendant "does not contest that the Government proved . . . that there were overt acts taken in furtherance of that conspiracy." (Gov. Br. at 6 n.2). Further, the Court finds that there was sufficient evidence to find this element beyond a reasonable doubt. (*See, e.g.*, D.E. No. 69 ("Vol. I") at 188:4–189:16 (testimony regarding Government Exhibit 202, a screenshot from Government Exhibit 104, in which Defendant is "walking [a]way from . . . Blackstone's vehicle, clutching what appears to be cash in his right hand")); *United States v. Brodie*, 403 F.3d 123, 131 (3d Cir. 2005) (recognizing that a payment could be an "overt act").

Instruction Number 16; *see also* Vol. I at 14:5–15:5).[4] Here, the relevant United States agency was the USPS and the charged "interfere[nce]" or "obstruct[ion]" was violation of the federal regulation that "USPS employees . . . receive only lawful compensation for [mail] deliveries." (D.E. No. 11 at 4; *see also* Vol. II at 269:13–15 & 271:7–12 (USPS's "acting manager of delivery and customer service programs" testifying that under federal regulations "mail carriers [are] [n]ever permitted to accept cash" (citing Government Exhibit G-604 (5 C.F.R. § 2635.204)))). Therefore, on these elements, the Government was required to prove beyond a reasonable doubt that Defendant and another person agreed that a USPS employee would receive unlawful compensation for mail delivery "by deceit, craft or trickery, or at least by means that are dishonest." *See Hammerschmidt*, 265 U.S. at 188.[5] Viewing the evidence in the "light most favorable" to the Government, *see, e.g.*, *Fattah*, 914 F.3d at 183, the Government did so.

If the jury believed the testimony of Leonard Gresham and Glenn Blackstone,[6] Defendant's alleged co-conspirators, the jury would believe that:

- Blackstone "approach[ed] [Gresham] about delivering packages to [Blackstone]"; Gresham agreed, saying, "[S]ure, no problem"; Blackstone "g[a]ve [Gresham] $50 in cash"

---

[4] It also means "to cheat the government out of property or money," *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924), but the parties agreed that the Government was not alleging, and did not attempt to prove, that "in this case the defendant cheated the United States out of money or property" (*see, e.g.*, Vol. IV at 708:24–709:2).

[5] Defendant was acquitted of bribery (D.E. No. 62), but it is irrelevant that the charged bribery and "recei[pt] [of] only lawful compensation for [mail] deliver[y]" (*see* D.E. No. 11 at 4) bear some resemblance: The "bribery—of which [Defendant, again,] was acquitted—and [charged] conspiracy have different elements . . . under different statutes"; and "[e]ven if the verdicts were inconsistent," they would be "unreviewable" on that basis. *See United States v. Salahuddin*, 765 F.3d 329, 342 n.6 (3d Cir. 2014) (citing *United States v. Powell*, 469 U.S. 57, 63 (1984); *United States v. Maury*, 695 F.3d 227, 264 (3d Cir. 2012)).

[6] As observed above, the Court cannot "usurp the role of the jury by weighing credibility." *See United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006). "[T]he final decision concerning the believability of Government witnesses rests with the jury." *United States v. Lowell*, 490 F. Supp. 897, 901 (D.N.J. 1980), *aff'd*, 649 F.2d 950 (3d Cir. 1981).

- when Gresham "gave [Blackstone] [a] package"; and that was not "the only time that [Gresham] delivered packages to [Blackstone] in exchange for cash." (Vol. 1 at 63:1–21).[7]

- Gresham "ha[d] a conversation with [Defendant]" about whether Defendant "want[ed] to make some money"; told Defendant that "[a]ll [Defendant] got to do is just pick up a package for [Blackstone], and he'll pay you for it"; and Defendant "was with it." (*Id.* at 68:16–69:2).

- Gresham "told [Defendant] that [Gresham was] gonna give [Defendant's] number to [Blackstone]," and that Blackstone was "going to give [Defendant] a call," and Defendant said, "okay." (*Id.* at 73:23–74:1).

- On October 5, 2016, after Gresham had "already had conversations with [Defendant] about delivering packages to [Blackstone]," and "t[old] [Defendant] that [Blackstone] would pay [Defendant] if [Defendant] delivered packages to [Blackstone]," Gresham "asked [Defendant,] [Do] you want to make some money tomorrow[?]"—*i.e.*, asked whether Defendant "want[ed] to make some money to take care of some packages for us . . . for [Blackstone]"; and Defendant responded "Hell, yeah" and that Defendant was "gonna take care of the package for [Blackstone]." (*Id.* at 76:21 & 77:4–78:2).

- Blackstone subsequently "communicated by phone [and] text"[8] with Defendant "about delivering parcels"; and when "[Defendant] delivered packages to [Blackstone]," Blackstone paid Defendant $100 "[f]olded in [Blackstone's] hand and a handshake," and Defendant had "no reaction" and did not "ask [Blackstone] any questions about it." (Vol. II at 344:3–345:13).

---

[7] As reflected in the trial testimony, Blackstone also "go[es] by" the name "Tay." (*See* Vol. II at 304:14–17).

[8] Notably, "Darc" was the name under which Blackstone saved Defendant in his phone. (Vol. II at 343:24–344:9).

"[E]xtensive testimony," alone, could be "sufficient to support a criminal conviction," *United States v. Harmon*, 681 F. App'x 152, 156 (3d Cir. 2017), but in addition to the foregoing extensive testimony, the Government presented a video dated August 3, 2017 (Government Exhibit 104; *see* Vol. I at 184:23), in which Defendant "plac[es] . . . priority [mail] parcels into . . . Blackstone's vehicle and then reach[es] his right hand in and . . . accept[s] what will later be seen as cash from . . . Blackstone." (Vol. I at 186:4–8; *see also id.* at 188:4–189:16 (Government witness testimony regarding Government Exhibit 202, a screenshot from Government Exhibit 104, in which Defendant is "walking [a]way from . . . Blackstone's vehicle, clutching what appears to be cash in his right hand")).[9] Blackstone testified that on this occasion, after Defendant "pass[ed] [Blackstone] the packages," Blackstone "passed [Defendant] the money" in "a handshake gesture with the money folded": Blackstone "extend[ed] [his] hand like [he was] shaking [Defendant's] hand": and Defendant "grasp[ed] [Blackstone] like a handshake, t[ook] the money and walk[ed] off." (Vol. II at 395:12–24). Neither man "said anything." (*Id.* at 395:25–396:3).

Although "[t]he sufficiency of the evidence in a conspiracy prosecution requires close scrutiny," *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987) (internal quotation marks omitted), "a conspiratorial agreement can be proven circumstantially based upon reasonable inferences drawn from actions and statements of the conspirators or from the circumstances surrounding the scheme," *United States v. McKee*, 506 F.3d 225, 238 (3d Cir. 2007). Here, based on the above "statements of the conspirators"—and the "circumstances surrounding" Defendant's acceptance of cash from Blackstone after delivering packages to him—the jury could have reasonably inferred that Defendant agreed with Blackstone or Gresham to accept cash for

---

[9] Defense counsel apparently conceded that Defendant received cash from Blackstone on this occasion. (*See* Vol. III at 627:2–7 (apparently conceding that Government Exhibit 104 depicts an "exchange[] taking place . . . on August 3rd" but that a Government witness "couldn't tell [the jury] whether it was more than a dollar, $5, $10 or a $20 bill")).

delivering packages. *See id.* Moreover, the jury could have reasonably inferred that the receipt of cash to which Defendant agreed was *unlawful* under a federal regulation (*see* Vol. II at 271:7–12 (citing 5 C.F.R. § 2635.204)); and that under that conspiratorial agreement, the cash would be received by deceit, craft or trickery, or at least by means that are dishonest. *See Hammerschmidt*, 265 U.S. at 188.

In support of that latter point, Blackstone testified that Defendant received cash compensation "[f]olded in [Blackstone's] hand and a handshake" and that Defendant had "no reaction" and did not "ask [Blackstone] any questions about it" when he received it in that way. (Vol. II at 344:3–345:13). Blackstone testified that the incident recorded on video in Government Exhibit 104 showed such an exchange, and that in the video Blackstone "extend[ed] [his] hand *like* [he was] shaking [Defendant's] hand"; and Defendant "grasp[ed] [Blackstone] *like* a handshake, t[ook] the money and walk[ed] off." (Vol. II at 395:12–24). Based on that evidence, the jury could have reasonably inferred that receiving the cash in this manner was an effort to conceal it or an "endeavor[] to keep the payment[] hidden." *See United States v. Urban*, 404 F.3d 754, 761 (3d Cir. 2005) (recognizing that criminal suspects can "conceal[] . . . payments . . . by folding [them] up and transferring the money in what was commonly referred to as a 'green handshake'"). And that Defendant had "no reaction" and did not "ask [Blackstone] any questions about" the cash he received in a handshake could further support that reasonable inference. (*See* Vol. II 344:3–345:13); *United States v. Salehi*, 187 F. App'x 157, 171 (3d Cir. 2006) (recognizing that a "conspiracy agreement may be a tacit and unspoken one, and a jury may infer the existence of a . . . conspiracy from unusual acts"). "It does not matter that there *could be* a more innocent interpretation of [Defendant's] conduct . . . . The jury plainly rejected an innocuous interpretation and it is not this Court's role to revisit it." *See Reeves*, 84 F. Supp. 3d at 397 (emphasis added).

Hence the Government met its burden to prove that under the conspiratorial agreement between Defendant and Blackstone or Gresham, cash would be received "by deceit, craft or trickery, or at least by means that are dishonest," *see Hammerschmidt*, 265 U.S. at 188—even if only "circumstantially based upon reasonable inferences drawn from actions and statements of the conspirators," *see McKee*, 506 F.3d at 238.

The foregoing evidence, then, suffices to prove beyond a reasonable doubt the first two elements of Count Two. And although the foregoing evidence also suffices to prove beyond a reasonable doubt the third element—*i.e.*, that Defendant joined the conspiracy knowing of its objective to defraud the United States and intending to join together with at least one other conspirator to achieve that objective (Jury Instruction Number 16)—the Court will provide additional support for this conclusion now. "A defendant's knowledge and intent [to conspire] may be inferred from conduct that furthered the purpose of the conspiracy," *McKee*, 506 F.3d at 241 (citing *Direct Sales Co. v. United States,* 319 U.S. 703, 711 (1943)). Defendant's receipt of cash compensation "[f]olded in . . . a handshake" with "no reaction" (*see* Vol. II at 344:3–345:13) was sufficient evidence from which to draw that inference: Defendant and Blackstone's "green handshakes," *see Urban*, 404 F.3d at 761, were "act[s] of concealment from which one could infer guilty knowledge," *see Brodie*, 403 F.3d at 154.

In sum, a conspiracy "can be proven entirely by circumstantial evidence," *id.* at 134, and even if "[t]he evidence [here] was not overwhelming, . . . all that was required was that '*any rational juror* could have found the elements of the crime beyond a reasonable doubt.'" *United States v. Carbo*, 572 F.3d 112, 119 (3d Cir. 2009) (quoting *United States v. Cartwright*, 359 F.3d 281, 286 (3d Cir. 2004)) (emphasis added). "Under this highly deferential standard, the jury's verdict [on Count Two] must be upheld . . . ." *See id.* (overturning a judgment of acquittal).

### III. Motion for New Trial

Federal Rule of Criminal Procedure 33(a) provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Motions under Rule 33 are addressed to the sound discretion of the trial court and are granted sparingly." *United States v. Lowell*, 490 F. Supp. 897, 904 (D.N.J. 1980), *aff'd*, 649 F.2d 950 (3d Cir. 1981) (citing *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir. 1976)). Notably, however, "when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002).

Defendant contends that "the interest of justice" requires a new trial because "the jury's verdict is contrary to the weight of the evidence." (*See* Def. Br. at 5). But a district court "can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence *only if* it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (emphasis added). Here, that is not the case. Defendant's only apparent argument in support of the contrary conclusion is that "the credibility of [Blackstone and Gresham] was entirely impeached" because they "were both self-interested witnesses who brokered plea deals with the Government." (*See* Def. Br. at 5–6). But, for the following reasons, the Court cannot concur that the credibility of Blackstone and Gresham was "entirely impeached"—even though both witnesses were "subjected to vigorous cross-examination by experienced counsel." *See United States v. Friedland*, 660 F.2d 919, 932 (3d Cir. 1981).

Much of Blackstone's testimony, for instance, was corroborated by video evidence. (*Compare, e.g.*, Vol. II at 395:3–396:3, *with* Government Exhibit 104). And much of Gresham's

testimony was corroborated by text message evidence.  (*Compare, e.g.*, Vol I at 76:14–78:2, *with* Government Exhibit 301-D).  The witnesses, furthermore, generally corroborated the testimony of one another.  (*Compare, e.g.*, Vol. I 84:1–85:13 (Gresham testifying as to a discussion with Blackstone regarding a delivery of packages that Defendant would "take care of" on August 31 or September 1, 2017), *with* Vol. II 397:18–398:15 (Blackstone testifying as to a discussion with Defendant on August 30, 2017, regarding an inquiry from Defendant on whether Blackstone "was . . . expecting any boxes tomorrow")).  Therefore, the Court cannot agree that "the testimony of Mr. Gresham and Mr. Blackstone should not have been given the credence that the jury apparently afforded to it."  (*See* Def. Br. at 6).

Even when "the testimony of the Government's witnesses contain[s] minor inconsistencies and weaknesses—all of which were the subject of extensive cross examination by defense counsel—"the Court may deny a motion for a new trial when "the overall testimony was very consistent with what the allegations stated in the indictment."  *United States v. Vas*, 497 F. App'x 203, 206–07 (3d Cir. 2012) (internal quotation mark omitted).  For the above reasons, such was the case here.  "Accordingly, the Court has not identified any miscarriage of justice warranting a new trial."  *See, e.g.*, *United States v. Ferriero*, No. 13-0592, 2015 WL 7737341, at *22 (D.N.J. Dec. 1, 2015), *aff'd*, 866 F.3d 107 (3d Cir. 2017).

**IV.  Conclusion**

The Court DENIES Defendant's motion for a judgment of acquittal or, alternatively, a new trial.  An appropriate order will accompany this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**